Filed 3/2/22  In re Roy J. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re ROY J. et al., Persons Coming Under the Juvenile Court Law. | B311267 (Los Angeles County Super. Ct. No. DK22633A-C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| ADELA R., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Juvenile Court Referee. Affirmed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

Adela R. (mother) challenges orders denying her modification petition under Welfare and Institutions Code section 388 and terminating her parental rights to her children Roy J. (born March 2011), Aaliyah J. (born March 2013), and Prince M. (born September 2015), pursuant to Welfare and Institutions Code section 366.26.[1]  We find no error and affirm the orders.

## COMBINED FACTUAL AND PROCEDURAL BACKGROUND

This is mother's second appeal in this dependency proceeding.  Mother previously appealed from the juvenile court's judgment declaring the three children dependents of the court, challenging one of the juvenile court's three stated grounds for assertion of jurisdiction over the children.  In an unpublished opinion we affirmed the judgment.  (*In re Roy J.* (Aug. 29, 2018, B285949) [nonpub. opn].)

The following portion of the factual and procedural background is taken from our prior opinion in this matter:

**The family**

The family consists of mother and her three children, who were ages six, four, and one at the time the petition was filed.

---

[1]     All further statutory references are to the Welfare and Institutions Code.

2

Raydell J. is the father of Roy and Aaliyah. Darrell M. was found to be Prince's presumed father.[2]

The three children were occasionally cared for by maternal grandmother, Blanca, and maternal stepgrandfather, Carlos. Blanca and Carlos have two teenage daughters, Joana and Kimberly.

**Family history**

A September 4, 1999 referral to the Los Angeles County Department of Children and Family Services (DCFS) alleging that mother (then eight years old) was the victim of ongoing sexual abuse by Carlos was substantiated. On numerous occasions Carlos would enter mother's room at night and fondle and touch mother's vaginal area. In addition, Blanca and Carlos would hit mother on a regular basis. Mother did not tell Blanca that Carlos was touching her because Blanca was "so in love" with Carlos.

On September 18, 1999, DCFS received a second referral of general neglect because Blanca allowed Carlos into her apartment although DCFS had told Blanca not to allow Carlos near mother. This second referral was deemed unfounded.

In February 2002, a referral alleged that mother's brother, Francisco, then seven years old, and a classmate were fondling a female classmate's genital area. The referral was deemed unfounded.

In October 2004, another referral alleged general physical and emotional abuse of mother and Francisco by Blanca and Carlos. The caller suspected that mother, then 13 years old, had been sexually abused by Carlos. Mother and Francisco were

---

[2]      Raydell J. and Darrell M. are not a parties to this appeal.

disciplined by kneeling down and holding soda bottles for hours. Francisco had behavioral problems, and mother was not enrolled in school.  The allegation was also deemed unfounded.

**The referral and investigation leading to the current proceedings**

On March 9, 2017, DCFS received a referral alleging that Roy, Aaliyah, and Prince were victims of general neglect by mother.  Mother was residing in a motel with the children and engaging in prostitution under the name "Rose."  Mother's pimp was an individual named "Darriel or Darrel M."  Mother had been a prostitute since she was 13 years old.  It was also believed that mother had used marijuana and ecstasy in the children's presence.  On one occasion, mother slept for three days, though two of the children tried to wake her.  The children would occasionally reside with Blanca and Carlos.

When a social worker went to the motel in search of mother, it was discovered that mother had been going to the motel for three or four years, but had been "red flagged" due to frequent physical fights with an unknown male.

When the social worker was able to contact mother by phone, mother stated that she was homeless.  Mother agreed to meet the social worker at the DCFS office and gave permission to the social worker to interview the children who were at Blanca's home.

At Blanca's home the social worker was told by then 16-year-old Kimberly that she resided there with Blanca, Carlos, and her 15-year-old sister, Joana.  Mother's children were also then in the home.  Mother had not visited them for about a month but called to speak with them.  Kimberly had not witnessed any domestic disputes but observed mother with a

black eye. Mother claimed she had a fight with a girl, but Aaliyah stated that "Daddy" hit mother. Kimberly noted that the children referred to Darrell M. as "Daddy."

Aaliyah was interviewed. She did not know what drugs were, but she had seen mother smoking cigarettes. Aaliyah denied witnessing mother acting weird. She stated, "daddy hit mommy with a belt while she was in the shower." Aaliyah could not identify "daddy" by name.

On March 10, 2017, mother and Darrell were interviewed at the DCFS office. The social worker observed that mother's left eye was bruised and purple. Mother stated that she had been in a fight two weeks earlier with a girl for stealing.

Mother explained that her employer had cut her hours, and she could not afford rent. Mother had moved in with Blanca and Carlos, but the landlord complained so she left. She was homeless since then.

Mother denied any recent prostitution. The social worker informed mother that her criminal history showed she was arrested for prostitution as recently as January 2017. Mother claimed that since she had previously engaged in prostitution, she was arrested any time she was seen on Long Beach Boulevard. Mother denied drug use, denied that she and Darrell engaged in physical altercations, and agreed to drug test. Mother stated that Darrell had ended their romantic relationship when he found out he was not Prince's father, but he still helped her by paying for hotel rooms. Mother denied both domestic violence and that her children had ever been sexually abused.

When interviewed, Blanca initially denied that Carlos sexually abused mother when mother was a child. She then added that mother claimed she had lied about the sexual abuse.

To Blanca's knowledge, "everything was fine." Blanca was not interested in legal guardianship of the children due to her health and Kimberly's depression.

On March 15, 2017, mother tested positive for drugs. On March 29, 2017, mother called the social worker and reported she had been arrested on March 15, 2017, on a warrant for prostitution and fraudulent checks. Mother was released from custody on March 21, 2017. On March 31, 2017, mother tested positive for cannabinoids.

Darrell considered himself to be Prince's father despite a paternity test to the contrary. Aaliyah and Roy called him "daddy" because they did not have a relationship with their father. Darrell acknowledged that he was on probation for domestic violence. He also confirmed that he had been trying to keep mother from using methamphetamines. Mother last used the drug two months earlier.

**Section 300 petition and detention**

On April 11, 2017, the juvenile court issued a removal warrant for the children, and DCFS took the children into protective custody.

On April 25, 2017, DCFS filed a petition on behalf of the children pursuant to section 300. Under section 300, subdivision (b) (failure to protect), the petition alleged that (1) mother had a history of methamphetamine and marijuana use; (2) mother failed to make an appropriate plan for the children in that she left them in the care of Blanca, despite knowing that Carlos resided in the home, and that Carlos had molested mother as a child; and (3) Raydell, father of Roy and Aaliyah, is a registered controlled substance offender with a criminal history including convictions for possession of a controlled substance and robbery.

6

Pursuant to section 300, subdivision (d), the petition repeated the allegations that mother failed to make an appropriate plan for the children's care and supervision by leaving them in a home where Carlos resided, despite knowledge that Carlos had sexually abused mother as a minor.

At the initial detention hearing on April 25, 2017, the juvenile court found that DCFS had presented a prima facie case that the children were individuals described under section 300, subdivisions (b) and (d). The children were ordered detained from their parents on an emergency basis. On April 27, 2015, the juvenile court ordered family reunification services and weekly monitored visitation.

**Jurisdiction/disposition report and hearing**

DCFS filed a jurisdiction/disposition report on June 6, 2017. When interviewed, mother admitted to past drug use but denied current drug use. She admitted having "snorted methamphetamine" when she was seven weeks into her pregnancy with Prince, but then stopped. She resumed "snorting" methamphetamine when Prince was six months old. Mother admitted to smoking marijuana since the age of 10, but stopped during the pregnancy of each child. Blanca would watch the children while mother was under the influence of marijuana.

As to counts (b)(2) and (d)(1), which alleged that she inappropriately left the children in a home with Carlos, mother admitted these allegations were true. Mother acknowledged that she was molested by Carlos for approximately one year. Mother was seven years old when the abuse began. Carlos would touch her breasts and vagina under her clothes. Mother recalled that Carlos left the home after DCFS became involved, but returned after DCFS closed its case. Mother said Carlos did not touch her

7

again after the investigation, but from then on they had a strained relationship. At the age of 14 mother ran away from home and supported herself through prostitution.

Mother was aware that she was leaving her children at the home where Carlos lived. Mother claims to have spoken with Carlos and told him not to be alone with the children. When Blanca could not be there, Darrell would supervise. Mother denied the children were ever left under Carlos's supervision. Mother had no concerns about giving Carlos access to the children because she forgave him for sexually abusing her when she was a child.

In an interview Darrell expressed awareness that mother had been sexually abused by Carlos and had confronted Carlos about it, saying it was "not right" and that he should not touch Roy, Aaliyah, or Prince. Darrell would "keep an eye" on Carlos, and he and mother made unannounced visits to the home. The children were always with Blanca, and Darrell never observed Carlos caring for the children.

In a July 21, 2017 supplemental report, DCFS reported that mother had entered a substance abuse program.

At the adjudication hearing on July 21, 2017, mother admitted that she made an inappropriate plan for the children but asked the court to dismiss count (d)(1) only because the children were not at substantial risk of sexual abuse. The children's counsel agreed with mother that count (d)(1) should be dismissed and indicated that the allegations were more appropriately pled under count (b)(2). The juvenile court found that mother did not sufficiently ensure that when she left her children with Blanca, Carlos would not offend again. Further,

8

the court noted that Carlos had not done anything to show that he was unlikely to offend again.

The juvenile court sustained amended allegations under section 300, subdivisions (b) and (d).  Under both counts (b)(2) and (d)(1), the court sustained allegations that mother failed to make an appropriate plan for her children in that she left them in the home where Carlos resided, which placed them at risk of harm.

**Disposition and first appeal**

The juvenile court declared the children dependents of the court under section 300, subdivisions (b) and (d).  The children were removed from parental custody.  The court ordered family reunification services for mother and Darrell, denied family reunification services to Raydell, and ordered monitored visits for mother and Darrell.

On July 28, 2017, mother filed a notice of appeal from the court's July 21, 2017 judgment.

On August 29, 2018, this court affirmed the judgment.  (*In re Roy J., supra*, B285949.)[3]

**Reunification period through February 2018 six-month review hearing**

In the January 22, 2018 status review report, DCFS reported that Roy and Aaliyah remained placed with their caregivers Guadalupe and Frank V., and Prince remained placed with Jennifer and Gilbert G.  Roy and Aaliyah had been with Guadalupe and Frank since April 20, 2017.  Prince had been in Jennifer and Gilbert's home since April 24, 2017.  All three

---

[3]     This concludes the portion of this section from our prior opinion in this matter.

9

children were comfortable with their caregivers. Roy and Prince were approved for regional center services. Aaliyah initially suffered from trauma-related symptoms, but the majority of her symptoms had diminished since she was living with her caregivers, and she was receiving therapy. Prince was also receiving weekly in-home therapy sessions.

Mother had enrolled in an in-patient drug program on June 27, 2017, but was discharged on September 3, 2017, because against the rules she was in possession of a cell phone. While mother was in the in-patient program she tested positive for marijuana three times.

On September 10, 2017, mother informed the DCFS social worker that she would attend Alcoholics Anonymous (AA) meetings while waiting to be enrolled into another drug treatment program. However she never provided the social worker with any AA sign-in sheets. On September 21, 2017, mother was scheduled to enroll at House of Uhuru drug treatment outpatient program, but she was arrested for outstanding warrants the day before she was to begin the program. On November 8, 2017, mother was officially accepted into the outpatient program. Mother had 14 negative drug tests and three no-shows between September 12, 2017, and December 21, 2017.

Mother initially had four-hour monitored visits with the children at her inpatient drug program. After her termination from the program, the children's caregivers would monitor the visits at a McDonald's restaurant. Jennifer, Prince's caregiver, reported that he had a difficult time with the visits. He would get upset and hit himself with a closed fist, have night terrors, cry, and pinch himself. Roy and Aaliyah's caregiver, Guadalupe,

10

had informed Jennifer that the children were exposed to domestic violence while they lived with mother.  Since Prince had never been examined by a physician he was taken for his first round of immunizations.

Mother failed to visit the children for the month of June 2017.  On December 22, 2017, the social worker reported that mother's visits had been inconsistent since she was asked to leave the inpatient drug program.  However in January 2018 mother's visits were reported to be more consistent.  On January 29, 2018, Jennifer reported that mother failed to appear for a visit with Prince the previous week.

In a February 9, 2018 last minute information for the court, DCFS reported it was unable to determine if mother was participating in her outpatient drug treatment program because the case manager had not returned the social worker's phone calls and mother's communication with DCFS had decreased.  Mother was no longer requesting bus passes.  Mother had been arrested on September 23, 2017, January 7, 2018, and January 30, 2018.  Mother failed to visit the children on January 27 and February 3, 2018.

At the February 9, 2018 six-month review hearing, the juvenile court found mother was in partial compliance with her case plan and set the matter for a 12-month review hearing.

**Reunification period through August 2018 12-month review hearing**

DCFS filed a status review report in June 2018.  The children continued to thrive in their respective placements.  The therapists observed that Roy and Aaliyah had greatly benefited from the stability and care provided.  Roy told the social worker, "I need to be sure we are going to be able to stay here with Frank

11

and Guadalupe." Aaliyah expressed that she wanted mother to be able to continue visiting her and Roy on the weekends. Prince's therapist also reported that he had made significant progress, and Jennifer was active in assisting him in meeting his goals.

In May 2018, mother graduated from the House of Uhuru outpatient program. Mother moved into transitional housing and obtained employment as a warehouse representative for a cosmetics company. Mother had completed eight 12-step meetings but needed to make up meetings that she had missed. On June 6, 2018, mother was arrested on misdemeanor charges.

Mother continued to have monitored visits with the children on Saturdays from 11:00 a.m. to 5:00 p.m. Mother visited regularly but did not stay for the entire allotted time. In the past, Darrell had transported mother to the visits, but in June 2018 Guadalupe and Frank noted that mother was driving Darrell's car. The social worker was concerned because mother had reported that she had no contact with Darrell. On June 13, 2018, Jennifer reported that Prince did not want to visit with mother the previous Saturday.

On June 25, 2018, the juvenile court ordered DCFS to assess unmonitored overnight visits for mother.

In August 2018, DCFS filed an interim review report. On July 18, 2018, mother's case manager at House of Uhuru confirmed that mother completed the outpatient drug treatment program on June 20, 2018. However mother did not receive a certificate of completion because she did not attend the required Narcotics Anonymous (NA) meetings. Between April and July 2018, mother failed to test twice for drugs and once had a diluted test result. She tested negative for drugs 11 times.

12

During her visit with the children on March 31, 2018, mother fed Prince candy and soda and refused to stop after Jennifer cautioned that the child would become ill. Prince vomitted and had diarrhea that night and the following day. Mother laughed when she heard Prince was ill. Mother did not visit the children on April 13, 2018, May 12, 2018, or June 2, 2018.

DCFS recommended that unmonitored overnight visits with mother were not appropriate because mother's transitional housing prohibited overnight visits with children, and mother had not been forthcoming about her relationship with Darrell.

At the August 10, 2018 12-month review hearing, mother was homeless and residing with friends. The social worker testified that in late July 2018 mother initiated a verbal incident with Jennifer after mother took Prince to the bathroom and Jennifer followed. Mother became outraged. She then followed Jennifer, Gilbert and Prince out of McDonald's and shouted, "[Y]ou can't have your own baby, so that's why you're trying to steal mine." Mother failed to visit the children the following week. Mother missed two weeks of visits in late July and early August 2018.

The juvenile court found that, while mother had made substantial progress, she needed to complete the NA meeting requirements and continue with individual counseling. The court warned mother to avoid contact with Darrell as he was not compliant with any of the court's orders. The court ordered mother to begin twice weekly unmonitored visits with the length of the visits to increase over time. Darrell was not to be present at mother's visits. The matter was set for a section 366.26 hearing.

**Reunification period through January 31, 2019 section 366.22 hearing**

In an October 2018 status review report the social worker reported that mother was driving Darrell's car to get to the visits, even though she had a suspended license. Mother was not regularly participating in visits and would visit the children once a week rather than twice a week. She would visit for two hours instead of the five hours she was allotted. She missed visits on September 8, September 15, September 22, September 29, October 5, and October 12, 2018.

On September 6, 2018, mother was arrested for operating a vehicle without a driver's license and spent three days in jail. Mother was also arrested on October 2, 2018.

In September 2018 Roy and Aaliyah expressed fear of returning to mother's care if Darrell was present. They disclosed that when they lived with mother, Darrell would physically assault mother to get her out of bed. Roy witnessed Darrell hit mother with a belt when she was not doing something or moving fast enough for Darrell. Roy admitted that Darrell was sometimes violent with him. Roy and Aaliyah expressed that they did not want to return to mother's custody but wanted to stay with Guadalupe and Frank.

On October 21, 2018, Roy said he did not want to travel to visit mother. He informed the social worker that if mother was not going to show up, he would rather play soccer. Guadalupe and Frank reported that mother did not call to speak with the children during the week.

Mother reported she had been attending Cocaine Anonymous meetings, however she did not have a sponsor. Mother's case manager at the shelter where mother had been

residing said mother had left. The case manager had been trying to find mother housing that would accommodate the children, but mother abandoned her spot and left no information. Mother confirmed she had been living with friends. Mother was pregnant and due to her pregnancy was unable to stand for long periods of time. Her work hours had been cut and she could no longer afford the rent at the shelter. Mother had not been testing for drugs but denied using drugs. She stated she was not drug testing because she was depressed. Mother also admitted that she had not been visiting the children but would do so soon. Mother admitted having difficulty connecting with Prince. Mother failed to test for drugs seven times and tested negative 12 times from August through December 2018.

Mother did not visit Roy and Aaliyah from October 12 through the end of November 2018. Mother did not visit Prince from September through December 2018. Mother had a visit with the children on December 1, 2018, and the caregivers noticed that mother had bruising around her right eye.

On December 10, 2018, mother had an unsupervised visit with Roy and Aaliyah for five hours. Guadalupe was concerned because mother told the children to lie as to who attended the visit, and Roy yelled at Aaliyah, causing her to cry.

On December 27, 2018, mother had a visit with Prince, who recognized mother and played with her.

On January 7, 2019, Guadalupe submitted a caregiver information form stating that mother told the children during unmonitored visits to lie about who attended the visits. When Guadalupe picked up the children from the visits, they seemed ill at ease, and Roy yelled at Aaliyah, "[D]on't tell! [D]on't tell! [M]ommy is going to get in trouble."

At the January 31, 2019 section 366.22 hearing, the parties stipulated to extending mother's family reunification services to the 24-month date. The court set the matter for a section 366.25 hearing. The court declared Jennifer and Gilbert to be Prince's de facto parents and added Jennifer as Prince's educational rights holder.

**January 2019 through September 12, 2019 section 366.25 hearing**

Mother gave birth to Sophia on January 14, 2019, and on January 17, 2019, mother was discharged to the maternal grandmother's home. On February 11, 2019, mother admitted that she had not been attending NA meetings and did not have a sponsor. Mother said she had not thought about doing drugs because Sophia was keeping her busy. Mother was concerned about losing contact with her other children and felt that they held a grudge against her because of her absence from their lives. Maternal grandmother was concerned that mother would revert to drugs and prostitution when maternal grandmother moved out of state. Mother admitted she needed help supervising the children during unmonitored visits. Mother failed to drug test once and tested negative three times between January 19, 2019, and March 7, 2019. Mother was not utilizing her second day of weekly visits and did not participate in phone visits with the children. Mother failed to appear for three visits and arrived late to one visit between January 5 and March 16, 2019.

Guadalupe and Frank reported that mother had bruises on her cheek when she showed up to a visit in February 2019. Mother was trying to hide the bruising. Roy did not want to visit with mother, and it had become a challenge to get him to participate. On March 18, 2019, Roy informed Guadalupe that

16

during a visit mother called Darrell and made Roy thank Darrell for a gift he received from Darrell. Guadalupe and Frank expressed concern that mother was not able to watch all four children during the unmonitored visits.

On March 11, 2019, mother terminated the visit early. When Guadalupe and Frank arrived to pick up the children at McDonald's, they found Roy walking in the restroom barefoot and Aaliyah alone in the play area. Mother was in the restroom with Sophia and Prince.

Jennifer said Prince was reluctant to visit. He would appear sad before visits and would have tantrums while preparing for visits. Jennifer was concerned that mother was not engaging with Prince during the visits. At the March 11, 2019 visit Prince was walking around the McDonald's bathroom with only his urine soaked socks on.

On April 22, 2019, mother reported that she moved in with Prince's paternal aunt and was going to work at a hot dog restaurant that Prince's paternal family owned. Mother failed to visit the children on March 30, April 13, and April 20, 2019. On May 24, 2019, Jennifer filed a caregiver information form stating that mother's visits had been inconsistent, which was disruptive to Prince, who did not want to go on visits with mother.

In a June 6, 2019 report, DCFS reported that mother had visited Roy and Aaliyah on May 4, 2019, and visited Prince on May 11, 2019. Mother failed to show up at the May 18, 2019 visit. Guadalupe and Frank reported that they were concerned that mother was not disciplining the children during visits. At one visit, Roy slapped Aaliyah and mother did not discipline him because she felt that it was normal for siblings to act this way towards each other. On August 12, 2019, Jennifer submitted

17

another caregiver information form stating that mother had been inconsistent with her visits with Prince.

On June 6, 2019, mother was cited for driving with a suspended license, and on June 12, 2019, mother was cited for loitering for the purpose of prostitution.

Mother failed to visit the children six times from June 22 through July 27, 2019. She also failed to participate in her parenting program. On August 6, 2019, at 3:04 a.m., mother was cited by the sheriff's department.

On August 30, 2019, Jennifer submitted another caregiver information form stating that mother scheduled visits with Prince but failed to appear and that Prince no longer wanted to visit with mother. Mother failed to visit the children on August 17, 2019, August 24, 2019, and August 31, 2019. Mother visited the children on August 10, 2019, and September 7, 2019. Mother also failed to drug test three times between August 14 through August 26, 2019. On August 27, 2019, mother informed the social worker that she could not drug test because she had lost her identification, which the social worker replaced for mother.

At the September 12, 2019 section 366.25 hearing, the juvenile court found mother had not made substantial progress in her case plan. The court terminated family reunification services and set the matter for a section 366.26 permanency planning hearing.

**Permanency planning**

On October 1, 2019, the children's counsel filed a walk-on request for Guadalupe and Frank to be appointed the children's co-educational rights holders, as they had not heard from mother

since the section 366.25 hearing.  The juvenile court granted the request.

On December 1, 2019, Jennifer and Gilbert informed the social worker that they wanted to adopt Prince.  Prince had been in their home since April 24, 2017, and was bonded to Jennifer and Gilbert.

On December 12, 2019, Guadalupe and Frank informed the social worker that they wanted to adopt Roy and Aaliyah, who had been in their home since April 20, 2017.  The children were bonded to Guadalupe and Frank and were thriving in their home.

On December 22, 2019, mother was arrested on a warrant for prostitution.

In the January 13, 2020 section 366.26 report, the social worker reported that mother had not contacted the children's caregivers to schedule any visits since the September 2019 hearing.  Mother had not called to speak with the children or inquire as to their wellbeing.  Guadalupe and Frank had called mother during the holidays to facilitate a phone call between her and the children.  Mother said she was unavailable and did not ask about the children.

On January 30, 2020, mother was convicted of driving while her license was suspended.

**Mother's section 388 petition**

On January 26, 2021, mother filed a section 388 petition seeking reinstatement of family reunification services.  Mother alleged that she had completed all of her court-ordered programs and had obtained stable housing.  Attached to mother's petition were her certificate of completion of parenting in March 2020, a letter for housing, her NA sign-in sheets from 2017, and her

completion letter from House of Uhuru dated June 20, 2018. The juvenile court set mother's section 388 petition for hearing.

In a February 2021 status review report DCFS reported that mother had not visited the children since February 2020, nor had she called the caregivers to inquire about their wellbeing. Guadalupe noted that mother did not call the children on Christmas or their birthdays.

On March 8, 2021, DCFS received a referral alleging that mother was engaging in substance abuse, including marijuana and alcohol, while caring for two-year-old Sophia.

DCFS interviewed the children for a March 15, 2021 response to mother's section 388 petition. The investigator observed that Roy felt uncomfortable talking about mother and was uncertain of the last time he had seen mother, but he responded, "Maybe 1 year." When asked whether he wanted to return to mother's care, Roy responded "Yes." When asked if he would be okay remaining with Guadalupe and Frank, Roy responded, "Yes."

Aaliyah stated she resided with "my dad, my mom, and I have Jocelyn my cousin, [and] Adrian my cousin." Aaliyah then clarified she called Guadalupe "Grandma Lupe or Lupe." Aaliyah recalled living with mother when she was "tiny." She had happy memories but also recalled Darrell hitting mother with a belt. Aaliyah expressed that she would like to remain with Guadalupe and Frank. Aaliyah could not recall the last time she spoke with mother, whom she missed and loved. She also wanted to go back and see Prince and Sophia. She missed mother's hugs and squeezes and said mother would let the children eat fruit at bedtime and let her use her phone at night.

Since mother had not visited or called the children since early 2020, Guadalupe was surprised that mother filed a section 388 petition. The children left four to five messages for mother, which were not returned. The children called mother on Mother's Day, but mother did not respond. Guadalupe felt it was in the children's best interests to stay with her and Frank.

Prince was attached to Jennifer and Gilbert, whom he referred to as "mommy and daddy." Prince appeared to be unable to recall mother. Mother's last visit with Prince was in February 2020. During the four years that Prince lived with Jennifer, mother had called only three times. The most recent call was on Prince's birthday in September 2019. Jennifer felt it was in Prince's best interest to remain with her and Gilbert. He was bonded to them.

DCFS interviewed mother on March 3, 2021. Mother resided in a one-bedroom apartment, but she would be provided with a voucher for a larger apartment if Roy, Aaliyah and Prince were returned to her. Mother stated that she filed the section 388 petition because she had been doing well for 18 months and had Sophia in her care for two years. Mother admitted past drug use but stated she had not used drugs for two years. Mother was not attending NA and did not have a sponsor. Mother had a misdemeanor court hearing on March 11, 2021. She was unable to recall the reason for the misdemeanor case.

Mother admitted to not visiting the children since the beginning of the pandemic. She also admitted to not having called. Mother acknowledged problems with Jennifer and blamed the social worker for poor communication. Mother also noted she was embarrassed to face Roy and Aaliyah because they would ask her when they were coming home. Mother acknowledged that if

the children were returned to her care they would be "a little like strangers." She would need to get to know what they like and get them used to each other. Mother admitted she was still in contact with Darrell, who had been incarcerated for the last 18 months for pandering. Mother anticipated his release at the end of March 2021. Mother denied a relationship with Darrell other than they were good friends.

The dependency investigator obtained posts from mother's social media accounts. In her profile, mother had an OnlyFans account, which was popular with sex workers. On March 27, 2020, mother posted a picture of herself with "Let's Smoke." On April 1, 2020, mother posted a picture of herself pouring a glass of Jack Daniels whiskey, stating, "Almost half way gone." On April 4, 2020, mother posted a photo, stating, "Are your kids acting up? Whip their ass! CPS is closed." On April 20, 2020, mother posted a picture of herself wearing a low cut shirt, stating, "Happy 420!!!" Mother posted several photos of Darrell, suggesting that she missed him and looked forward to his return when he was released from jail. Mother also posted a photo of herself vaping with the caption, "Good morning[.] Gotta have my medicine before starting my day." In two undated posts, mother was viewed blowing smoke, one from a blunt. DCFS located several other posts of mother smoking blunts and drinking alcohol. DCFS opined that mother had not resolved her substance abuse problems as she was regularly smoking marijuana and drinking alcohol instead of visiting her children. DCFS expressed concern that mother was awaiting Darrell's release from prison, given his past abuse of her. DCFS was also concerned that mother had expressed on social media the view that physical abuse was appropriate. Given Roy's special needs

(learning disability, speech delay, and medical needs) and Prince's special needs (speech delay), mother's expectation that she could care for all the children seemed unrealistic.

**March 2021 hearing on mother's section 388 petition and section 366.26 termination of parental rights**

The juvenile court conducted a hearing regarding mother's section 388 petition on March 15 and 18, 2021. The juvenile court admitted into evidence DCFS's reports and took judicial notice of the previously sustained petition, case plan, and minute orders.

Mother testified that she had successfully completed drug rehabilitation and learned tools to avoid relapse. Mother stated she stopped going to NA meetings when the pandemic started and had never had a sponsor. Mother admitted she did not visit the children since approximately April or July 2020. She stated that she stopped visiting because of the pandemic. Mother denied being in a relationship with Darrell. When confronted with her social media posts, mother stated that she drank one sip on her birthday and only drank twice since the children had been removed from her care. Mother denied using marijuana recently and stated that cigarettes were like medicine to her. Mother wanted the chance to be a good parent and stated that she had a stable home for the past two years.

Though mother was aware that Roy had speech and health problems, she did not know details. She was also aware that Prince had a speech problem. Mother admitted she had not been in contact with the children's caregivers for about a year.

Mother's counsel requested the juvenile court grant her section 388 petition and reinstate family reunification services. The children's counsel requested the court deny mother's section

388 petition because mother had not shown changed circumstances. She had not been engaged in NA meetings and did not have a sponsor. The children's counsel added reunification would not be in the children's best interests because mother would be unable to adequately supervise the children. DCFS joined with the children's counsel. DCFS added that mother's social media posts were a "red flag" and mother's testimony about the posts was not credible, especially because mother was not participating in any services to maintain her sobriety. DCFS clarified that mother had not seen the children since February 2020. Mother also failed to take advantage of her unmonitored visits and did not call the children or participate in virtual visits.

The juvenile court found that mother had failed to demonstrate changed circumstances and that it would not be in the children's best interests to grant mother's section 388 petition for additional family reunification services. The court denied mother's petition.

Mother's counsel objected to the termination of parental rights under the beneficial parental relationship exception found in section 366.26, subdivision (c)(1)(B)(i). The children's counsel and DCFS argued that mother did not meet her burden of showing that this exception applied because mother had not visited the children in 13 months, had not called them even on their birthdays, had not called on holidays, and did not return their calls when they called her.

The juvenile court found the children were adoptable and that no exception to termination of parental rights applied. Mother had not maintained regular visitation and had not established a bond with the children that outweighed the benefits

24

of the permanence and stability of adoption.  The juvenile court terminated mother's parental rights.

On March 22, 2021, mother filed a notice of appeal.

## DISCUSSION

### I.  Mother's section 388 petition

Mother argues that the juvenile court erred in denying her section 388 petition, that she showed a change of circumstances, and that it was in the children's best interests to grant her reunification services.  As set forth below, we find no error in the juvenile court's decision.

### A.  *Applicable law and standard of review*

Section 388 permits the juvenile court, "upon grounds of change of circumstance or new evidence . . . to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."  (§ 388, subd. (a)(1).)  A petition pursuant to section 388 may seek to set aside an order terminating reunification services and to reinstate such services.  (*In re D.N.* (2020) 56 Cal.App.5th 741, 754.)  "[T]he Legislature has provided the procedure pursuant to section 388 to accommodate the possibility that circumstances may change after the reunification period that may justify a change in a prior reunification order."  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309 (*Marilyn H.*).)

Under section 388, the petitioning party has the burden of proving by a preponderance of the evidence both a change of circumstances or new evidence that warrants the proposed modification of a prior order and that the proposed modification is in the child's best interest.  (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.)  "The petition is addressed to the sound discretion of

25

the juvenile court and its decision will not be disturbed on appeal in the absence of a clear abuse of discretion." (*Ibid.*)

It is not enough for a parent to show changing circumstances. (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.) The parent must show changed circumstances of a significant nature. (*Ibid.*) After reunification services have been terminated, the focus shifts to the child's need for permanence and stability, and it is presumed that continued out-of-home care is in the best interest of the child. (*Marilyn H., supra*, 5 Cal.4th at p. 310.) "The parent, however, may rebut that presumption by showing that circumstances have changed that would warrant further consideration of reunification." (*Ibid.*)

## B.     *Changed circumstances*

Mother claims that she showed changed circumstances by having completed her services and a substance abuse treatment program, had maintained sobriety for a significant period of time, and maintained a stable residence and successfully parented Sophia for two years.

Mother claims her three years of sobriety is longer than the 120-day period criticized in *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, footnote 9, "It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform." Mother ignores the conflicting evidence before the court, which suggested that mother was not being truthful about her sobriety. While mother did participate in a drug rehabilitation program, mother failed to obtain a certificate of completion because she did not attend the required NA meetings. The record contains numerous incidents of missed drug tests over the years. At the time of the hearing on mother's petition, mother admitted that she had not attended NA

26

meetings for over a year and had never obtained a sponsor. Further, DCFS presented evidence that mother was actively engaging in alcohol and drug use. The court had before it evidence from mother's social media accounts showing that mother was smoking marijuana and drinking. Mother admitted she drank alcohol on her birthday. The court was not required to credit mother's evidence that she had achieved sobriety in the face of so much evidence to the contrary. The evidence before the court supported its determination that mother had not made significant progress in overcoming her substance abuse issues.

Mother also points to her ability to successfully parent Sophia for two years. However, recent allegations brought to DCFS raised concerns regarding neglect of Sophia due to mother's substance abuse. The juvenile court was made aware of the recent allegations in an interim review report filed by DCFS in March 2021. Mother argues that an investigation does not equate to a true finding for general neglect and should not be interpreted as such. However, the juvenile court was entitled to consider the ongoing investigation as to mother's alleged neglect of Sophia when considering whether mother's circumstances had truly changed.

Mother cites *In re Casey D.* (1999) 70 Cal.App.4th 38, disapproved on other grounds by *In re Caden C.* (2021) 11 Cal.5th 614, 635 (*Caden C.*), which explained the difference between changed and changing circumstances: "A petition which alleges merely changing circumstances would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the

27

child or the child's best interests" (*Casey D.*, at p. 47). Mother argues that she showed changed, not changing, circumstances.

As set forth above, the juvenile court was entitled to credit the contrary evidence presented by DCFS that mother had not demonstrated changed circumstances. "The change of circumstances . . . 'must be of such significant nature that it requires a setting aside or modification of the challenged prior order.'" (*In re Mickel O., supra*, 197 Cal.App.4th at p. 615.) Mother failed to persuade the juvenile court that she had genuinely changed, and the record supports the juvenile court's decision.

## C. *Best interests of the children*

The record supports the juvenile court's determination that mother did not make a sufficient showing of changed circumstances. Therefore, we need not discuss the second required showing—that offering mother further reunification services was in the best interests of the children. However, we note that mother failed to meet her burden of proving that further reunification services served the best interests of the children.

"After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) The focus shifts to the child's need for permanence and stability, and "there is a rebuttable presumption that continued foster care is in the best interests of the child." (*Ibid.*) While mother was not seeking a change in her children's placement, her request for continued reunification services suggests that mother's goal was reunification with her children.

Mother points to evidence that her children stated that they loved her and wanted to return to her care, particularly Aaliyah's testimony that she missed mother's hugs and squeezes and missed Sophia and Prince. Mother argues that the children's comments show that it was in the children's best interests to allow mother further reunification services.

Again, mother declines to cite the contrary evidence in the record. Mother had not had custody of her children since April 2017—almost four years. Mother failed to consistently visit the children, which led to the children experiencing disappointment and engaging in difficult behaviors. Both Roy and Prince directly stated at different times that they no longer wanted to visit with mother. The children's caregivers pointed to mother's inconsistency as leading to behavioral problems with the children. In addition, the children appeared anxious after visiting with mother, as she would tell them to lie about who was present at the visits. Mother's coercion of the children into concealing the truth caused friction between Aaliyah and Roy. The children were thriving in stable, loving homes with their prospective adoptive parents. The juvenile court was entitled to consider all the evidence that the reunification services were not serving the children's best interests.

The juvenile court properly evaluated the evidence and determined that mother did not meet her burden of proof under section 388. The juvenile court acted well within its discretion, and we will not disturb its ruling.

29

## II. Beneficial parental relationship exception to termination of parental rights

### A. *Applicable law and standard of review*

If a court cannot safely return a dependent child to a parent's custody within statutory time limits, the court must set a permanency planning hearing under section 366.26. (*Caden C., supra*, 11 Cal.5th at p. 630.) "[W]hen the court orders the section 366.26 hearing, reunification services have been terminated, and the assumption is that the problems that led to the court taking jurisdiction have not been resolved." (*Ibid.*) The goal is to select and implement a permanent plan for the child. (*Ibid.*) "To guide the court in selecting the most suitable permanent arrangement, the statute lists plans in order of preference and provides a detailed procedure for choosing among them." (*Ibid.*) When it is determined that a child is adoptable, the court "shall" terminate parental rights to allow for adoption. (*Ibid.*; see § 366.26, subd. (c)(1).)

If the parent shows that termination of parental rights would be detrimental for at least one specifically enumerated reason, the court should decline to terminate parental rights and select another permanent plan. (*Caden C., supra*, 11 Cal.5th at pp. 630-631.) One such exception exists where the juvenile court finds that termination of parental rights would be detrimental to the child and (1) the parents have maintained regular visitation and contact with the child, and (2) the child would benefit from continuing the relationship. (§ 366.26, subd. (c)(1)(B)(i).) Thus, the parent must prove three elements in order to prevail under this exception: (1) regular visitation and contact; (2) a relationship, the continuation of which would benefit the child such that (3) the termination of parental rights would be

30

detrimental to the child. (*Caden C., supra*, at p. 631.) In assessing whether termination would be detrimental to the child, "the trial court must decide whether the harm from severing the child's relationship with the parent outweighs the benefit to the child of placement in a new adoptive home." (*Id.* at p. 632.) "By making this decision, the trial court determines whether terminating parental rights serves the child's best interests." (*Ibid.*)

A substantial evidence standard of review applies to the first two elements of this exception. (*Caden C., supra*, 11 Cal.5th at p. 639.) "The determination that the parent has visited and maintained contact with the child 'consistently,' taking into account 'the extent permitted by the court's orders' [citation] is essentially a factual determination. It's likewise essentially a factual determination whether the relationship is such that the child would benefit from continuing it." (*Id.* at pp. 639-640.) Under the substantial evidence standard we do not reweigh the evidence. Instead, the juvenile court's factual determinations should be upheld if "'supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence.'" (*Id.* at p. 640.)

The third element—whether termination of parental rights would be detrimental to the child—is different. (*Caden C., supra*, 11 Cal.5th at p. 640.) The "ultimate decision—whether termination of parental rights would be detrimental to the child due to the child's relationship with his parent—is discretionary and properly reviewed for abuse of discretion." (*Ibid.*) A court abuses its discretion "only when ""the trial court has exceeded

the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.'"'" (*Id.* at p. 641.)

**B.** *Regular visitation and contact*

Mother concedes that she did not visit the children in the past year. Although it was a year of a global pandemic, mother did not call or attempt to contact the children in any way. Mother did not even return the children's phone calls.

Further, even before the pandemic, mother failed to regularly visit the children. Mother missed numerous visits, which led to frustration and sadness for the children. Mother admitted at the hearing that if the children were returned to her care they would be "a little like strangers." Mother failed to meet the first element of the beneficial parental relationship exception to termination of parental rights.

**C.** *Beneficial relationship and detriment to the children*

Because the evidence supports the juvenile court's determination that mother failed to show regular visitation and contact, we need not discuss the questions of whether mother had a beneficial relationship with her children or whether termination of parental rights would be detrimental to the children. However, we note that substantial evidence in the record supports a determination against mother on these factors as well.

Mother argues that despite her lack of contact with the children she had a bond with her children, and it was in the children's best interests to maintain that bond. Mother argues that even the court noted that this was a very sad case because mother loved her children and they cared for her. Mother seeks a permanent plan of guardianship or long-term foster care to allow

the children to remain in the caregivers' respective homes yet maintain the relationship with their mother. (*In re Jerome D.* (2000) 84 Cal.App.4th 1200, 1208.)[4]

The evidence in the record supports a finding that mother's relationship with her children did not rise to the level of benefit such that it would be detrimental to the children for it to terminate. Mother's inconsistent visits were detrimental to the children's mental health. Roy expressed his preference to play soccer rather than visit with mother since she was inconsistent. Mother even admitted she was embarrassed to face Roy and Aaliyah because they would ask her when they were coming home. Mother's visits had a negative effect on Prince, who would appear anxious and act up in anticipation of her visits. Prince stated that he did not want to visit with mother and would have tantrums prior to visits. By the time of the termination of parental rights Prince could not even recall mother.

---

[4]    In *In re Jerome D., supra*, 84 Cal.App.4th at page 1207, there was insufficient evidence to support the juvenile court's finding that mother did not meet her burden of showing a beneficial relationship. The child had lived with his mother for the first six and one-half years of his life and had expressed his wish to live with her again. In addition, for at least two months, he had been having unsupervised overnight visits in her home. Furthermore, there was no woman in his life other than his mother with whom he had a beneficial relationship. (*Ibid.*) Under those circumstances, the child had a positive, parental relationship with his mother such that it would benefit him to maintain his relationship with his mother. The present matter is distinguishable, as mother here did not maintain visits with the children nor did she maintain a positive relationship with them.

Furthermore there was evidence that mother's visits were potentially hazardous to the children. Mother left Aaliyah unattended at a McDonald's, asked the children to lie about who was with her at the unmonitored visits, would not discipline the children appropriately during visits, and allowed Roy and Prince to walk around public restrooms without shoes, among other problems and concerns.

Overall, substantial evidence supported the juvenile court's findings that mother did not meet the required elements of the beneficial parental relationship exception to termination of parental rights. The trial court did not abuse its discretion in determining that termination of parental rights would not be detrimental to the children.

## DISPOSITION

The orders are affirmed.

_____
CHAVEZ, J.

We concur:


_____
LUI, P. J.


_____
ASHMANN-GERST, J.